1  THOMAS TOSDAL, ESQ.
   State Bar No. 067834
2  TOSDAL, SMITH, STEINER & WAX
   401 West A Street, Suite 320
3  San Diego, CA 92101-7911
   Telephone: (619) 239-7200
4  Fax: (619) 239-6048

5  Attorneys for Haley Colombo and Jessica Slagel

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10 IN THE MATTER OF THE         )   CASE NO. 08cv0146JM(CAB)
   COMPLAINT OF MISSION BAY JET )
11 SPORTS, LLC; ROBERT ADAMSON, )   REPLY IN SUPPORT OF MOTION
   individually and d.b.a.      )   TO DISMISS COMPLAINT
12 MISSION BAY SPORTS, FOR      )
   EXONERATION FROM OR          )
13 LIMITATION OF LIABILITY,     )   Date:  April 18, 2008
                                )   Time:  1:30 p.m.
14         Movants.              )   Court: 16
   _____)

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

CASE NO. 08cv0146JM(CAB)

**1.  Introduction**

Determining admiralty jurisdiction is necessarily fact specific, and there are no clear or bright lines to guide a federal court in determining when to exercise admiralty jurisdiction. McDonough v. Nolley, 729 Fed. Supp. 84, 85 (W.D. Wash. 1990) Especially as regards pleasure craft accidents, federal courts must be cautious about exercising admiralty jurisdiction over cases where there is no compelling federal interest or issue. Ibid.

Movants have the burden to factually establish admiralty jurisdiction. Seven Resorts, Inc., v. Cantlen, 57 F.3d 771, 773 (9th Cir. 1995) But Movants have not met their burden. Movants' factual showing is both very sparse and irrelevant. The specific location of the tort precludes a finding of navigability. And proper characterization of the incident compels the conclusion that Movants have not satisfied either of the two prongs of the connection test.

This Court also lacks jurisdiction because the Limitation of Liability Act cannot afford the Movants relief from the state action against them.

**2.  The Specific Location of the Tort Is Not Navigable**

   **A.  Movants Have Not Established The Location of the Tort Is Navigable for Admiralty Jurisdiction Purposes**

Movants' flawed analysis fails to address the specific location of the tort, which was the special use PWC area at the end of Mission Bay's South (not North) Pacific Passage. (Colombo decl. ¶4; Slagel decl. ¶4) This finger of water is located at the eastern end of the inland waterway of Mission Bay Park, is

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

bordered on three sides by land, and across its open side has a string of buoys with signs prohibiting the entry of boats. (Strobel decl. ¶¶6, 7) The area is prominently posted with signs restricting its use to jet skis.  (Strobel decl. ¶ 9-11) There are no docks, piers, or marinas within this special use area. (Strobel decl. ¶8) The City's Lifeguard Service enforces all postings applicable to the area.  (Strobel decl. ¶12) There is no evidence that the area is used by boats or any craft other than recreational jet skis.

The test for navigability for purposes of admiralty jurisdiction is whether a waterway is used or susceptible of being used as a highway of interstate or foreign commerce, which means activities related to the business of shipping. <u>The Daniel Ball</u>, 77 U.S. 557, 563 (1871); <u>Adams v. Montana Power Company</u>, 528 F.2d 437, 439 (9th Cir. 1975). The focus of the inquiry is the specific situs of the tort and not other parts of the waterway, such as other parts of Mission Bay. <u>LeBlanc v. Cleveland</u>, 198 F.3d 353, 359 (2d Cir. 1999)

Movants make no factual showing that any activity of a commercial nature occurs in the special use PWC area, much less any activity related to the business of shipping.  Everingham's declaration, which is silent as to the special use PWC area, claims that in Mission Bay in general there occur the activities of bait sale, sportfishing, and rental, sale, and use of personal watercraft and small pleasure boats. (Everingham decl. ¶ 6-7, 9-10) But none of these activities, including pleasure boating, water skiing, commercially guided sportfishing trips, and rental of small pleasure craft, are commerce for purposes of admiralty

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

2                CASE NO. 08cv0146JM(CAB)

1  jurisdiction. Adams v. Montana Power Company, supra at 439;
2  George v. Beavark, 402 F.2d 977, 979, 981 (8th Cir. 1968); Lynch
3  v. McFarland, 808 Fed. Supp. 559, 562 (W.D. Ky. 1992) (rental of
4  small craft not commerce)

5      The fact that the mouth of Mission Bay opens onto the
6  Pacific Ocean does not establish navigability for admiralty
7  jurisdiction purposes. The Hudson River is a much larger inland
8  waterway than Mission Bay, and the Hudson River opens onto the
9  Atlantic Ocean in New York Harbor, which is one of the biggest
10 commercial shipping harbors in the world.  But that does not mean
11 that all of the Hudson River is navigable for purposes of
12 admiralty jurisdiction.  Some locations on the Hudson River are
13 not navigable because of natural or artificial obstructions which
14 effectively prohibit maritime commerce. LeBlanc v. Cleveland,
15 supra at 359.  As a practical matter, the buoying off of the one
16 open end of the special use PWC area and its restriction to use
17 by jet skis is an artificial obstruction which effectively
18 prohibits maritime commerce.

19     Movants' reference to two cases involving Lake Havasu does
20 not help them.  Neither case discusses the basis for admiralty
21 jurisdiction of Lake Havasu.  H2O Houseboat Vacations, Inc., v.
22 Hernandez, 103 F.3d 914(9th Cir. 1996); Fun Time Boat Rental &
23 Storage, 431 Fed. Supp.2d 993, 996 (D. Ariz. 2006) And Lake
24 Havasu is a deep water lake that is 45 miles long and located on
25 the border of California and Arizona, obviously susceptible of
26 being used as a highway of commerce between those two states.

27     Movants appear to agree that the test for navigability is
28 the same as stated above by Real Parties, (Opposition p.3-4), but

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

they allude to a historical test of the ebb and flow of the tide. The ebb and flow of the tide cannot trump the governing standard of use or susceptibility of use as a highway for commerce. Limiting the test to ebb and flow of the tide would lead to the absurd result that all coastal marshes, such as the San Elijo and Penasquitos lagoons, would be navigable for purposes of admiralty jurisdiction. Complaint of Paradise Holdings, Inc., 795 F.2d 756, 758 (9th Cir. 1986), must be read in light of its facts. There, a cruise ship in a deep channel through reefs in the Pacific Ocean was hit by a large wave, an engine failed, and in order to regain control of the vessel, the captain reversed the remaining engine, backing into shallow water and striking some swimmers.

**B.   Regulations Cited By Movants Do Not Establish Admiralty Jurisdiction**

No statute or regulation supports a finding of navigability for admiralty purposes.  Movants claim "statutory" authority, (Opposition p.4-5), but do not cite a statute.  Rather, two regulations are cited, neither of which establish navigability for purposes of admiralty jurisdiction. A waterway that is navigable under the commerce clause for regulation purposes is not navigable for purposes of admiralty jurisdiction unless it is either used or susceptible of being used for maritime commerce. Chapman v. U.S., 575 F.2d 147, 151 (7th Cir. 1978).

One regulation cited by Movants only gives the Coast Guard jurisdiction over waters subject to tidal influence.  2 C.F.R. §2.1(a), 2.36(a)(2) The other regulates certain activity in Mission Bay. 33 C.F.R. §165.1, 165.1122(a) But navigable waters are defined for four different purposes, one of which is

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

4    CASE NO. 08cv0146JM(CAB)

regulation, and regulatory and administrative descriptions of waters as navigable cannot be given conclusive weight for the judicial task of determining admiralty jurisdiction. <u>Reynolds v. Bradley</u>, 644 Fed. Supp. 42 (N.D. N.Y. 1986)

Agreeing that administrative determinations of navigability are not controlling, the court <u>In re Strahle</u>, 250 Fed. Supp.2d 997, 1001 (N.D. Ind. 2003), found them to be significant in the absence of any meaningful factual showing to the contrary. But in this case there is a strong factual showing that the specific location of the tort is not navigable for admiralty jurisdiction purposes.

The partial document from the U.S. Department of Commerce submitted by Movants (Ex. A) is both inadmissible and irrelevant. The document describes areas of Mission Bay other than the special use PWC area and does nothing to establish susceptibility of that area or Mission Bay in general to maritime commerce, which the cases define as activities related to shipping.

Movants have not met their burden to factually establish navigability of the location of the tort for purposes of admiralty jurisdiction, and their complaint must be dismissed.

**3.   The Movants Have Not Established Either Prong of the Connection Test**

   **A.   The Features of the Incident**

Proper application of both prongs of the connection test depends upon the general features of the incident described in terms of "an intermediate level of possible generality." <u>Grubart, Inc. v. Great Lakes Dredge & Dock Company</u>, 513 U.S. 527, 539 (1995) The general features of an incident include both its

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

nature and location. Sisson v. Ruby, 497 U.S. 358, 363 (1990)("a fire on a vessel docked at a marina on navigable waters") In H2O Houseboat Vacations, Inc., v. Hernandez, supra at 915, the Ninth Circuit affirmed dismissal of a Limitation of Liability action for lack of admiralty jurisdiction. Plaintiffs in a state court action had been injured by carbon monoxide fumes that leaked into their rented houseboat while it was moored to the shore. The Ninth Circuit characterized the features of the incident to be the emission of carbon monoxide fumes inside a contained space within a houseboat tied to the shore. Id. at 916.

In this case, the general nature of the subject incident, described in "intermediate" terms, is the operation of a single jet ski so that its passengers fell off in waters forbidden to and not used by all other craft.

**B.   No Potential To Disrupt Maritime Commerce**

Properly defined, the general features of the subject incident have no potential to disrupt maritime commerce, because maritime commerce is forbidden and there is no evidence that there is in fact maritime commerce in the area of the incident.

Movants define the incident without the very important reference to its location – as a passenger falling off a vessel wherever that might occur, e.g. in a shipping channel, near a dock or marina, where Coast Guard rescue was required, or where the bay had to be closed for search and rescue. (Opposition p.6:20-25) It is unknown where the latter two alleged locations may be in reality, if anywhere.

But the Ninth Circuit rejects this kind of speculation. Affirming dismissal of a limitation complaint for lack of

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

6    CASE NO. 08cv0146JM(CAB)

potential impact on maritime commerce, the Ninth Circuit in <u>H2O Houseboat Vacations, Inc., v. Hernandez</u>, <u>supra</u> at 916-7, refused to speculate about the effect on commerce if the boat had slipped its mooring and drifted into Lake Havasu or whoever was steering the boat had lost consciousness because of carbon monoxide fumes, concluding that such speculation would require the court to ignore the actual incident. And the Supreme Court's reference in the pre- <u>Sisson</u> and <u>Grubart</u> case of <u>Foremost Insurance Co. v. Richardson</u>, 457 U.S. 668, 675 (1982) to a collision between boats at the mouth of the St. Lawrence Seaway was to illustrate the potential impact on commerce of a collision between two boats and not a description of the general features of the incident.

Movants' claim that the courts "have routinely" found admiralty jurisdiction applicable to passengers who have fallen from a vessel is not supported by the cases.  A passenger did not fall off in either <u>Mink v. Genmar Industries, Inc.</u>, 29 F.3d 1543, 1544 (11th Cir. 1994)(passenger slammed into deck next to operator at high speed in Gulf of Mexico) or <u>Complaint of Paradise Holdings, Inc.</u>, <u>supra</u>,(cruise ship hit by large wave backed into swimmers). In <u>Fun Time Boat Rental & Storage</u>, <u>supra</u> at 996-7, admiralty jurisdiction was not contested and the court in those circumstances speculated that a passenger thrown into the open waters of Lake Havasu could potentially restrict navigation there. And the jet ski in <u>Szollosy v. Hyatt Corp.</u>, 208 Fed. Supp. 2d 205,207-8, collided with a breakwater in the ocean.

What distinguishes this case from the cases relied upon by Movants is that there was no collision of any description (with craft, swimmer, passenger or submerged object) and the incident

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

1 occurred in an area not open to and not used for maritime
2 commerce.
3     Movants have not established that the general features of
4 the incident potentially disrupt maritime commerce, so the
5 complaint must be dismissed.

6     **C.    No Substantial Relationship to Traditional Maritime Activity**

7     As to operation of pleasure craft, Foremost emphasized that
8 navigation provides the substantial relationship to traditional
9 maritime activity. Foremost Insurance Co. v. Richardson, supra
10 at 675. With one exception, all of the cases cited by Movants in
11 support of the alleged relationship of the incident with
12 traditional maritime activity involved navigation in the sense of
13 guiding a craft to avoid a collision of some sort. Foremost
14 Insurance Co. v. Richardson, supra at 669 ("whether the collision
15 of two pleasure boats on navigable waters falls within the
16 admiralty jurisdiction of the federal courts"); Yamaha Corp. V.
17 Calhoun, 516 U.S. 199, 201 (1996) (jet ski collided with boat);
18 In re Strahle, supra at 999 (jet ski struck swimmer); St. Hilaire
19 Moye v. Henderson, 496 F.2d 973, 975 (8th Cir. 1974)(propeller
20 cut person in water) Notably, St. Hilaire Moye v. Henderson,
21 supra at 978-9, relied for its holding on the tests set forth in
22 Kelly v. Smith, 485 F.2d 520 (5th Cir. 1973), which the Supreme
23 Court disapproved in Grubart and which is no longer good law.
24 Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1118 (5th Cir.
25 1995)

26     The one exception is Hogan v. Overman, 767 F.2d 1093, 1094
27 (4th Cir. 1985), which questioned but did not overrule the Fourth

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

28

        8    CASE NO. 08cv0146JM(CAB)

Circuit's holding in Crosson v. Vance, 484 F.2d 840, 842-3 (4th Cir. 1973), that negligent operation of a tow boat causing injury to a water skier did not bear a substantial relationship to traditional maritime activity. Hogan's curt opinion is based upon its interpretation of the omission of a water skier example in a Foremost footnote.

Real parties submit that Hogan, which has not been adopted by the Ninth Circuit, is not the last answer and that Crosson better fits the governing concept of navigation in the sense of steering a craft to avoid collision as traditional maritime activity. Cf. Chapman v. U.S., supra at 151 (no admiralty jurisdiction for single pleasure boat going over submerged dam and capsizing.)

"[C]ommon sense often makes good law." Petition of Madsen, 187 Fed. Supp. 411, 414 (N.D.N.Y. 1960) The Ninth Circuit applies requires both a reasonable and common sense definition of navigation when determining the existence of a substantial relationship with traditional maritime activity. Delta Country Ventures, Inc. v. Magana, 986 F.2d 1263 (9th Cir. 1993)(choice of place to moor houseboat not navigation and relationship to traditional maritime activity lacking.) It makes little sense to conclude that operation of a single jet ski in a counterclockwise circle in an inland water park restricted to jet skis where no collision of any description occurs implicates navigation sufficiently to establish a substantial relationship with traditional maritime activity.

Movants have not established that the general features of the incident bear a substantial relationship to traditional

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

maritime activity, and the complaint must be dismissed.

**4.     The Complaint Must Be Dismissed Because the Limitation of Liability Act Cannot Afford Any Relief to Movants**

The Movants have no substantive answer to the motion to dismiss on the ground that the Limitation of Liability Act cannot provide Movants any relief. E.g. <u>Joyce v. Joyce</u>, 975 F.2d 379, 385 (7th Cir. 1992) Movants argue that they need only plead but not prove their case at this stage.  But that is beside the point. The Limitation of Liability Act cannot provide relief to Movants and the case must be dismissed because the conduct alleged against Movants in the state action necessarily involves "privity or knowledge." <u>Ibid</u>. If Real Parties prevail in the state court, "privity or knowledge" will necessarily be established.  If Real Parties lose in the state court, there is no need for a limitation proceeding.

The complaint must be dismissed under Rules 12(b)(1) and (6) because the Limitation of Liability Act cannot afford relief to Movants.

**5.     Conclusion**

The Movants have not met their burden to establish admiralty jurisdiction, having failed to satisfy the location and both of the connection tests.  And the limitation act cannot provide Movants with any relief from the state case. The complaint must be dismissed with prejudice.

Dated: March 28, 2008              By: /s Thomas Tosdal
                                   Email: ttosdal@tosdalsmith.com
                                   Attorneys for Real Parties

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048