```
 1  THOMAS TOSDAL, ESQ.
    State Bar No. 067834
 2  TOSDAL, SMITH, STEINER & WAX
    401 West A Street, Suite 320
 3  San Diego, CA 92101-7911
    Telephone: (619) 239-7200
 4  Fax: (619) 239-6048

 5  Attorneys for Haley Colombo and Jessica Slagel
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF MISSION BAY JET SPORTS, LLC; ROBERT ADAMSON, individually and d.b.a. MISSION BAY SPORTS, FOR EXONERATION FROM OR LIMITATION OF LIABILITY, <br><br> Movants. | CASE NO. 08cv0146JM(CAB) <br><br> **REAL PARTIES' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** <br><br> Date: May 30, 2008 <br> Time: 1:30 p.m. <br> Courtroom: 16 |

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

CASE NO. 08cv0146JM(CAB)

## Table of Contents

1. Introduction.................................................. 1
2. Answers to the Court's Factual Questions...................2
3. The General Features of The Incident Did Not Have A Potentially Disruptive Impact on Maritime Commerce.........4
   A. The General Features of the Incident Causing Injury...4
      (1) The Movants' Scatter Shot Approach Is Largely Speculative and Irrelevant and Misapplies the Test...5
      (2) The Correct Description of the General Features of the Incident.......................................5
   B. No Potentially Disruptive Impact on Maritime Commerce.6
      (1) PWC Rental Is Not Maritime Commerce...............7
      (2) The Court Cannot Speculate About Potential Effects Had The Incident Occurred At A Very Different Type Location........................................ 8
      (3) The General Features of the Incident Had No Potential Disruptive Impact On Maritime Commerce......9
4. Conclusion..................................................10

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

# TABLE OF AUTHORITIES

Cases                                                                      Page

Adams v. Montana Power Company,
528 F.2d 437,438(9th Cir. 1975) . . . . . . . . . . . . . . . . . 7

Choat v. Kawasaki Motors Corp.,
675 So.2d 879(1996) . . . . . . . . . . . . . . . . . . . . . . . . 8

Foremost Insurance Co. v. Richardson,
457 U.S.668,675(1982) . . . . . . . . . . . . . . . . . . . . . . . 6

George v. Beavark,
402 F.2d 977,979,981(8th Cir. 1968) . . . . . . . . . . . . . . . 7

Grubart, Inc. v. Great Lakes Dredge & Dock Company,
513 U.S. 527 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 5

H2O Houseboat Vacations, Inc., v. Hernandez,
103 F.3d 914, 916 (9th Cir. 1996) . . . . . . . . . . . . . . 4,5,8

Polly v. Estate,
859 Fed. Supp. 270,272(E.D. Mich. 1994) . . . . . . . . . . . . . . 9

Sinclair v. Soniform,Inc.,
935 F.2d 599, 600 (3d Cir. 1991) . . . . . . . . . . . . . . . . . 9

Sisson v. Ruby,
497 U.S. 358, 362(1990) . . . . . . . . . . . . . . . . . . . . . . 5

Taghadomi v. United States,
401 F.3d 1080 (9th Cir. 2005) . . . . . . . . . . . . . . . . . 6,9

Codes

Harbors & Nav. Code §652.5(d). . . . . . . . . . . . . . . . . . . .4

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

1. Introduction

The Movants' supplemental factual submission fails to answer many of the Court's factual questions and is largely irrelevant. The Movants' supplemental brief incorrectly characterizes the general features of the incident, misstates the concept of maritime commerce, and is premised upon speculative and irrelevant facts.

The factual record does not support a conclusion that the general features of the incident involved in this case had a potentially disruptive impact on maritime commerce. Accordingly, the Movants' have not sustained their burden of factually establishing admiralty jurisdiction, and the complaint must be dismissed.

2. Answers To the Court's Factual Questions

In its order of April 23, 2008, the Court asked some factual questions about the general nature of the accident. The answers:

**Location of the accident.** The accident occurred in the personal watercraft (PWC) area at the eastern end of the South Pacific Passage in Mission Bay Park. (Oliver depo., Movants' Ex. B p. 29; Slagel supp. dec. ¶2; Colombo supp. dec. ¶2; Map, ex. 1 coordinates H8) More precisely, the incident occurred in the eastern end of the special use PWC area, a substantial distance from the buoys which separate the PWC area from the South Pacific Passage. (*Ibid.*) Those buoys forbid the entry of boats into the special use PWC area. (*Ibid.*)

The special use personal watercraft area is a cul-de-sac, which is surrounded by land on three sides - on the east, north, and south. (Strobel supp. dec. ¶3; Strobel decl. ¶6) It does not

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

1 and cannot serve as a water passage to anywhere. (Strobel supp.
2 dec. ¶3) Having occurred in the eastern end of this area, the
3 accident took place well within this cul-de-sac.

**Uses of that general area of Mission Bay.** The special use
personal watercraft area does not have any buildings, structures,
docks, wharfs, or commercial establishments at or on its shores.
(Strobel supp. Dec. ¶3) Use of the special use PWC area is
restricted to personal watercraft - jet powered craft 13 feet or
less in length. (Strobel supp. dec. ¶3) Boats, ships, barges,
and other craft do not use and are not permitted to use the
special use PWC area. (*Ibid.*)

The South Pacific Passage of Mission Bay Park abuts the
western end of the special use PWC area where the incident
occurred. (Strobel supp. Dec. ¶4) The South Pacific Passage is a
"no wake" zone in which speeds are limited to 5 mph or less if
necessary to avoid the creation of any wake or wave action.
(*Ibid.*) The maximum depth of water in the South Pacific Passage
is 8-10 feet. (*Ibid.*)

Container, cargo, and commercial passenger ships do not
enter or use any part of Mission Bay. (Strobel supp. Dec. ¶5)
There is no location, dock, or wharf in Mission Bay at which
cargo and passengers from a commercial passenger or cargo ship
can be off-loaded. (*Ibid.*) Unlike San Diego Bay, there is no
pilot escort available in Mission Bay to guide commercial
shipping to a berth. (*Ibid.*)

All of the personal watercraft rental agencies which rent
"jet skis" for personal use are located outside the boundaries of
the Mission Bay Park.(Strobel supp. Dec. ¶6) Those boundaries

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

are shown on the park map, which is exhibit 1 in support of the motion to dismiss.

**No Coast Guard involvement.** There is no evidence that the Coast Guard was summoned to the scene of the incident. The Coast Guard did not come to the scene at any time that Ms. Colombo or Ms. Slagel were there before they were transported to the hospital by ambulance. (Slagel supp. dec. ¶3; Colombo supp. dec. ¶3)

**No rescue.** There was no rescue of either Ms. Colombo or Ms. Slagel. (Slagel supp. dec. ¶3; Colombo supp. dec. ¶3) Ms. Colombo was given a ride to the shore of the special use PWC area on a jet ski driven by Brett Kohl. (Colombo supp. dec. ¶3) Ms. Slagel was given a ride to the shore of the special use PWC area on a jet ski driven by a family friend, Jason Adame, who had been jet skiing along with Kohl and Ms. Colombo and Ms. Slagel. (Slagel supp. dec. ¶3) Both Ms. Colombo and Ms. Slagel received medical attention on the shore and were transported to the hospital. (Colombo supp. dec. ¶3; Slagel supp. dec. ¶3)

**No potential impact on navigation caused by the accident.** There is no evidence that the accident had either an actual or potential impact on navigation. A reasonable inference from the evidence before the Court is that the injured girls climbed on and were brought to shore by two jet skis, one driven by Kohl and the other driven by family friend Adame, and no other personal watercraft was impeded in any way. The acts of two girls getting back onto jet skis and being driven to shore in the special use PWC area does not pose any potential impact on the operation of any other personal watercraft.

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

There is no evidence that the Harbor Patrol boat on which Officer Oliver responded arrived with a blue light flashing. (Oliver depo. P.29, Movants' exhibit B) Even had the boat had a flashing blue light, other boaters are only required to slow and to not impede a patrol boat as it passes by with a flashing light. *Harbors & Nav. Code* §652.5(d) There is no evidence that the special use PWC area was closed after this incident, and Adamson's claims that the PWC area had been closed on other occasions because of accidents is wrong. (Everhart decl. ¶¶2,3)

**3. The General Features Of The Incident Did Not Have A Potentially Disruptive Impact On Maritime Commerce**

The first prong of the nexus or connection test "asks whether the general features of the incident causing the injury indicate the incident had a potentially disruptive impact on maritime commerce." H2O Houseboat Vacations, Inc., v. Hernandez, 103 F.3d 914, 916 (9th Cir. 1996) There are two key concepts – defining the general features of the incident causing injury and determining whether those features had a potentially disruptive impact on maritime commerce.

**A. The General Features of the Incident Causing Injury**

**(1.) The Movants' Scatter Shot Approach Is Largely Speculative and Irrelevant and Misapplies the Test**

The Movants take a scatter shot approach, apparently in the hope that something sticks. Variously, the Movants argue that the general features of the incident causing injury include passengers being repeatedly and intentionally thrown into the water by the operator (Movants' brief p.5), unavailability of the subject PWC for rental because it was impounded (*Id.* at p.5-6), Officer Oliver taking 2-3 days to write her report (*Id.* at p.6),

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

1  inaccurate allegations of closures of the PWC area because of
2  other accidents resulting in disruptions of PWC rentals (*Ibid.*),
3  response to the incident by a Harbor Patrol boat (*Id.* at 7), and
4  passengers falling overboard (*Id.* at p.8).

5      Movants' approach is largely speculative and irrelevant.
6  The conclusion that Kohl intentionally operated the jet ski to
7  throw off the passengers is inadmissible speculation at this
8  point. Mr. Kohl certainly disagrees with that conclusion. The
9  unavailability of the PWC for rental, the time taken by Officer
10 Oliver to write her report, the inaccurate allegation of closures
11 of the PWC area for other accidents, and response by a Harbor
12 Patrol boat do nothing to describe the general features of the
13 incident which caused injury to Real Parties.

14     To determine the "general features," the Court "must first
15 determine what was the incident that caused the injury," <u>H2O</u>
16 <u>Houseboat Vacations, Inc., v. Hernandez,</u> supra at 916, and then
17 describe the general features of the incident involved at an
18 intermediate level of generality. <u>Taghadomi v. United States</u>, 401
19 F.3d 1080 (9th Cir. 1080, 1086 (9th Cir. 2005)

20     **(2.) The Correct Description of the General Features of the Incident**

21

22     Description of the nature of the incident to an intermediate
23 level of generality requires inclusion of some (but not too much)
24 particularity about the incident and the type of location where
25 the incident occurred. <u>Sisson v. Ruby</u>, 497 U.S. 358, 362(1990)
26 ("a fire that began on a non-commercial vessel at a marina
27 located on a navigable waterway"); <u>Grubart, Inc. v. Great Lakes</u>
28 <u>Dredge & Dock Company</u>, 513 U.S. 527, 539 (1995)(damage by a
   vessel in navigable water to an underwater structure); <u>H2O</u>

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

1  Houseboat Vacations, Inc., v. Hernandez, supra at 916 ("the
2  emission of carbon monoxide fumes inside a contained space within
3  a houseboat tied to the shore").
4      In Taghadomi v. United States, supra, one person died and
5  another suffered injuries when a kayak capsized in the open sea
6  and Coast Guard rescue efforts were unsuccessful. Suit was
7  brought against the United States for allegedly negligent rescue.
8  In that context, the Court of Appeals described the incident as
9  "injury to boaters whose vessel capsizes at sea because of a
10 potential rescuer's negligence in carrying out its rescue
11 operation." Id. at 1086.
12     Cited by Movants and decided long before the cases discussed
13 above, the reference in Foremost Insurance Co. v. Richardson, 457
14 U.S. 668, 675 (1982), to a collision between boats at the mouth
15 of the St. Lawrence Seaway was illustrative of the potential
16 impact on commerce of a collision between two boats and was not a
17 description of the general features of the incident.
18     Here, a fair description of the general features of the
19 subject incident, described in "intermediate" terms, is the
20 operation of a single jet ski so that its passengers fall into
21 waters forbidden to boats and all other water craft.
22     B.  **No Potentially Disruptive Impact On Maritime Commerce**
23     Movants' assertion of potential disruption of maritime
24 commerce has two fatal flaws: (1) personal watercraft rental is
25 not maritime commerce, and (2) the Court cannot speculate about
26 potential effects at types of locations that are different from
27 the type of location where the subject incident occurred. The
28 general features of the incident which caused injury to Ms.

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

Colombo and Ms. Slagel had no potentially disruptive impact on maritime commerce.

### (1.) PWC Rental Is Not Maritime Commerce

Without one legal citation, the Movants' incorrectly claim that the rental of personal watercraft for use in the special use PWC area of Mission Bay Park constitutes maritime commerce. Maritime commerce for the purpose of admiralty jurisdiction means activities related to the business of shipping goods or persons in interstate or international commerce. The Daniel Ball, 77 U.S. 557, 563 (1871); Adams v. Montana Power Company, 528 F.2d 437, 438 (9th cir. 1975) Pleasure boating, water skiing, commercially guided sportfishing trips, and rental of small pleasure craft are not commerce for purposes of admiralty jurisdiction. Adams v. Montana Power Company, supra at 439; George v. Beavark, 402 F.2d 977, 979, 981 (8th Cir. 1968); Lynch v. McFarland, 808 Fed. Supp. 559, 562 (W.D. Ky. 1992) (rental of small craft not commerce) Accordingly, rental of small personal watercraft for pleasure use does not constitute maritime commerce for purposes of admiralty jurisdiction, and any potential disruption of such a rental business would not have a potentially disruptive impact on maritime commerce.

There are no buildings, structures, wharfs, docks, or commercial establishments of any kind on the shores of the special use PWC area. (Strobel supp. dec. ¶3) Adamson's claim that Mission Bay Jet Sports and other alleged PWC rental businesses are "On Mission Bay" (Adamson dec. ¶8) is especially galling. Adamson should know better. Mission Bay Jet Sports is located at 5370 Napa Street, San Diego, which is not on Mission

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

Bay. (Dec. Counsel ¶2, web page Ex. 6) Adamson has been arrested or criminally cited in a Harbor Patrol sting operation for illegally bringing rental jet skis to Mission Bay without a permit. (Decl. Counsel ¶3, Oliver depo. p. 89-91, Ex. 7) A sampling of other businesses named in Adamson's declaration as being "On Mission Bay" reveal the falseness of that claim. (Decl. counsel ¶4, Ex. 8)

PWC rental for use in the special use PWC area or on Mission Bay in general is not maritime commerce, and any potential disruption of a PWC rental business is not a potential disruption of maritime commerce.

    (2.)  **The Court Cannot Speculate About Potential Effects Had The Incident Occurred At A Very Different Type of Location**

Citing an Alabama case, Choat v. Kawasaki Motors Corp., 675 So.2d 879 (1996), the Movants invite the Court to speculate about the effects on maritime commerce of the incident had it occurred in a very different type of location, for example in the middle of a busy shipping lane. But the Ninth Circuit rejects such speculation. Affirming dismissal of a limitation complaint for lack of potential impact on maritime commerce, the Ninth Circuit in H2O Houseboat Vacations, Inc., v. Hernandez, supra at 916, described the general features of the incident as "the emission of carbon monoxide fumes inside a contained space within a houseboat tied to the shore". The court refused to speculate about the potential effect on commerce if the houseboat had slipped its mooring and drifted into Lake Havasu or if the boat's operator had lost consciousness because of carbon monoxide fumes, concluding that such speculation would require the court to ignore the actual incident. Id. at 916-7.

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

Even were the Court were to impermissibly speculate, the event of two passengers falling off a jet ski and then getting back on jet skis already in the area to be transported to shore would have no potentially disruptive impact on commerce no matter where it occurred.

Cases cited by Movants do not establish that passengers falling overboard necessarily potentially disrupts maritime commerce, no matter how or where that occurs. <u>Taghadomi v. United States</u>, <u>supra</u> at 1086, did not so hold. Rather, <u>Taghadomi</u> found a potential disruption of maritime commerce from injury to boaters whose vessel capsizes at sea because of a potential rescuer's negligence in carrying out its rescue operation. <u>Ibid.</u> And <u>Polly v. Estate</u>, 859 Fed. Supp. 270, 272 (E.D. Mich. 1994), a pre-<u>Grubart</u> case, involved two men falling overboard, requiring a search to find their bodies, whose boat floated unmanned in navigable waters for more than a day. <u>Sinclair v. Soniform, Inc.</u>, 935 F.2d 599, 600 (3d Cir. 1991), involved a claim that a boat's crew negligently failed to properly treat an injured diver nine miles off the New Jersey coast. That court's reference to the possibility of a commercial ship being diverted by a distress signal has no relevance here, because there is no commercial shipping in either the special use PWC area or Mission Bay.

(3.) **The General Features of the Incident Had No Potentially Disruptive Impact On Maritime Commerce**

Only jet powered personal watercraft less than 13 feet long use the special use PWC area where the incident occurred. Boats, ships, barges, and other craft do not use and are not permitted to use the special use PWC area. Landloced on three sides in the eastern end of Mission Bay Park, the special use PWC area cannot

-9-   CASE NO. 08cv0146JM(CAB)

1  serve as a water passage to anywhere. The adjacent South Pacific
2  Passage is a "no wake" zone in which speeds are limited to 5 mph
3  or less if necessary to avoid the creation of any wake or wave
4  action.
5      Container, cargo, and commercial passenger ships do not
6  enter or use any part of Mission Bay. There is no location, dock,
7  or wharf in Mission Bay at which cargo and passengers from a
8  commercial passenger or cargo ship can be off-loaded. There is no
9  pilot service to guide commercial shipping to a berth, even if
10 one existed.
11     The general features of the incident which caused the
12 injury, described in intermediate terms, were the operation of a
13 single jet ski so that its passengers fell into waters forbidden
14 to boats and all other water craft. These general features had no
15 potentially disruptive impact on maritime commerce.

### 4. Conclusion

17     The Movants bear the burden to prove by facts, not by
18 speculation, that the general features of the incident had a
19 potentially disruptive impact on maritime commerce. The Movants
20 have failed to do so.
21     The Movants have also failed to establish sufficient facts
22 to satisfy the location test, the second prong of the connection
23 test, and that the Court can grant relief, as set forth in Real
24 Parties' first round of briefing.
25 ///
26 ///
27 ///
28 ///

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

Accordingly, Movant's limitation complaint must be dismissed because of Movants' factual failure to establish admiralty jurisdiction.

Dated: May 23, 2008         /s/ Thomas Tosdal
                            Thomas Tosdal
                            Attorneys for Plaintiff

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

-11-    CASE NO. 08cv0146JM(CAB)