# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF MISSION BAY JET SPORTS, LLC; ROBERT ADAMSON, individually and d.b.a. MISSION BAY SPORTS, FOR EXONERATION FROM OR LIMITATION OF LIABILITY,<br><br>                    Movants. | CASE NO. 08cv0146 JM(CAB)<br><br>ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |

Claimants Haley Colombo and Jessica Slagel (collectively "Claimants") move to dismiss the complaint on the ground that the court lacks subject matter jurisdiction or, alternatively, that Mission Bay Jet Sports, LLC and Robert Adamson, individually and doing business as Mission Bay Jet Sports (collectively "Movants") fail to state a claim under the Limitation of Liability Act. Movants oppose the motion. For the reasons set forth below, the court grants the motion to dismiss for lack of subject matter jurisdiction. The Clerk of Court is instructed to close the file.

## BACKGROUND

Movants commenced this action on January 24, 2008 requesting, among other things, that this court (1) limit their liability in a state court to the value of the Jet Ski involved in the incident at issue, $6,005, and (2) enjoin further prosecution of them in state court. Movants filed this complaint for exoneration and limitation of liability pursuant to the Limitation of Vessel Owner's Liability Act, 46 U.S.C. §30501-30512

1 (the "Limitation Act"), Rule 9(h) of the Federal Rules of civil Procedure, and Rule F
2 of the Supplemental Rules for Certain Admiralty and Maritime Claims (the
3 "Supplemental Rules"). In conjunction with the complaint, Movants filed a stipulation
4 of value for the Jet Ski in the amount of $6,005 and deposited this amount with the
5 Court Clerk.

6 Movants are named as defendants in a state court action entitled Colombo v.
7 Kohl, Case No. 37-2007-00077350-CU-PO-CTL ("State Action"). Movants allege that
8 on July 29, 2007 an employee of Mission Bay Jet Sports, Brett Kohl, removed a jet ski
9 from the premises without their knowledge or consent. (Compl. ¶¶ 6, 7). The employee
10 then met some friends and provided jet ski rides to Claimants on Mission Bay,
11 navigable waters located within San Diego County. (Compl. ¶11). An accident
12 occurred injuring Claimants, (Compl. ¶9), and the guardians for them filed suit in state
13 court against Brett Kohl and Movants herein. (Compl. ¶16). By means of this action,
14 Movants seek to limit their liability to the value of the Jet Ski involved in the accident.
15 (Compl. at p.7:7-17).

16 In the State Action, Claimants allege four causes of action: (1) Movants
17 authorized and ratified Kohl's negligent operation of the Sea Doo and failed to
18 provided the water ski with adequate safety equipment; (2) negligent entrustment; (3)
19 negligent supervision of Kohl; and (4) misrepresentation. (Claimant's Exh. 4).

20 On February 7, 2008 this court granted Movants ex parte application to stay the
21 State Action and required Movants to provide notice to all interested parties. Claimants
22 now move to dismiss the complaint for lack of subject matter jurisdiction or,
23 alternatively, to dismiss the Limitation of Liability claim. Following an initial review
24 of the papers submitted, on April 24, 2008, the court requested further development of
25 the factual record. Movants oppose all motions.

26 **DISCUSSION**
27 **Legal Standards**
28 Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a complaint

may be dismissed for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). In considering a motion to dismiss for lack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). Attacks challenging the subject matter jurisdiction of the court can be either facial or factual, allowing "the court to look beyond the complaint." Savage v. Glendale Union High School, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Id.

**Subject Matter Jurisdiction**

Claimants move to dismiss the complaint on the ground that Movants fail to establish admiralty jurisdiction. Federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1); see also U.S. Const. art. III, § 2. A party seeking to invoke federal maritime jurisdiction over a tort claim must satisfy both a location test and a connection test. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531 (1995). The location test focuses on "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." Grubart, 513 U.S. at 534; Gruver v. Lesman Fisheries Inc., 489 F.3d 978, 982 (9th cir. 2007). The connection test has two prongs, each of which must be met for admiralty jurisdiction to be proper: "A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce [.]" Grubart, 513 U.S. at 534; Gruver, 489 F.3d at 982. The second prong examines "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Grubart, 513 U.S. at 534;

1  <u>Gruver</u>, 489 F.3d at 982.

2  Claimants challenge each element of admiralty jurisdiction.

3  <u>The Location Test</u>

4  Claimants contend that the portion of Mission Bay where the incident occurred is not navigable waters within the meaning of the location test. Claimants argue that that portion of Mission Bay is reserved for the use of personal water craft and therefore not capable of use as a waterway in interstate or foreign commerce. This argument is not persuasive.

The traditional domain of admiralty jurisdiction is the sea, including waters within the ebb and flow of the tide. <u>Complaint of Paradise Holdings, Inc.</u>, 795 F.2d 756, 759 (9th Cir.), <u>cert. denied</u>, 479 U.S. 1008 (1986). In <u>Paradise Holdings</u>, the claimants moved to dismiss the action for lack of subject matter jurisdiction arguing that the location of the accident was not navigable for purposes of establishing admiralty jurisdiction "[b]ecause of shallow water, reefs and state regulations prohibiting boating in the area" <u>Id.</u> The Ninth Circuit concluded that the accident occurred in waters "clearly subject to the ebb and flow of the tides. Throughout the nation's history, tidal waters have been held to be within the definition of 'navigable waters.'" <u>Id.</u> The Ninth Circuit then held "that in tidal waters, the ebb and flow of the tides remains the standard" for establishing navigable waters.

Here, it is undisputed that the accident occurred in Mission Bay, within the ebb and flow of the tidal waters of the Pacific Ocean. Consequently, the waters at issue are, as a matter of law, navigable for purposes of establishing admiralty jurisdiction. The court notes that Claimants' reliance on authorities construing the term "navigability" in the context of inland waterways is misplaced. <u>See</u> <u>The Daniel Ball</u>, 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1871); <u>Adams v. Montana Power Company</u>, 528 F.2d 437 (9th Cir. 1975); <u>H20 Houseboat Vacations, Inc. v. Hernandez</u>, 103 F.3d 914 (9th Cir. 1996); <u>Fun Time Boat Rental & Rental Storage</u>, 431 F.Supp. 2d 993 (D.Ariz. 2006).

In sum, the court concludes that the incident occurred on navigable waters for

purposes of establishing admiralty jurisdiction.

### The Connection Test

The first prong of the connection test requires Movants to establish that the general features of the incident have the potential to disrupt commercial marine commerce. Grubart, 513 U.S. at 534. As more fully described in Sisson v. Ruby, 497 U.S. 358, 363 (1990):

> We determine the potential impact [on maritime commerce] of a given type of incident by examining its general character. The jurisdictional inquiry does not turn on the actual effects on maritime commerce . . . ; nor does it turn on the particular facts of the incident . . . . Rather, a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity.

The incident is viewed at an "intermediate level of possible generality." Grubart, 513 U.S. at 538. That is, whether, in general, the type of incident at issue may disrupt maritime commerce. In Grubert, the Supreme Court rejected a limitation on admiralty jurisdiction over land-based injuries caused by a vessel operating in navigable waters. The claim involved pile-driving activity from a barge operating in the Chicago River. Several months after the pile-driving activity, water entered an allegedly improperly maintained freight tunnel running under the river which led to the flooding of many buildings in the Chicago Loop area. In applying the disruption prong, the Supreme Court asked "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." Id. at 539.

The Supreme Court defined the general feature of the incident as "damage by a vessel in navigable water to an underwater structure." Id. So characterized, the Supreme Court noted potential maritime disruption consisting of (1) disruption to the water course itself in that an eddy formed above the leak and (2) potential restrictions on the navigational use of the waterway during required repairs. Id. As such, the plaintiffs satisfied the disruption prong.

The court concludes that the general features of the incident at issue lack the requisite connection to disrupt maritime commerce. The general features of the incident

involve injuries to passengers arising from a single recreational vessel accident on navigable waters in an area closed to commercial shipping. Claimants fell off the vessel while recreating. Here, importantly, the accident occurred in a cul-de-sac area of Mission Bay reserved for personal water craft ("PWC"). (Movants's Supp. Exh. 2). The area where the accident occurred is only open to personal water craft, and a buoy line is strung across the South Pacific Passage to indicate the PWC area. (Movant's Supp. Exh. B at pp. 7:20-9:24). There are no buildings, structures, docks, wharfs, or commercial establishments on the shores of the PWC area. (Supp. Strobel Decl. ¶3). No commercial shipping occurs in this isolated and shallow portion of Mission Bay. All establishments that rent jet skis are located outside the boundaries of Mission Bay Park. (Id. ¶5).

Although not fully flushed out by the parties, "[c]ommerce for the purpose of admiralty jurisdiction means activities related to the business of shipping." Stanfield v. Shellmaker, Inc., 869 F.2d 521, 524 (9th Cir. 1989) (quoting Adams v. Montana Power Co., 528 F.2d 437, 439 (9th Cir. 1975)). There are simply no identified facts that the incident has a potential to impact maritime commerce in the sense that no commercial related shipping activities occur in the PWC area. The reasons offered by Movants in support of the connection prong are too tenuous to support admiralty jurisdiction. As noted in Sisson, "protecting commercial shipping is at the heart of admiralty jurisdiction" and "'[n]ot every accident in navigable waters that might disrupt maritime commerce will support federal admiralty jurisdiction.'" Id. at 362 (quoting Foremost, 457 U.S. at 675 n. 5). To warrant jurisdiction, the tortfeasor's activity must be "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply." Id. at 539. Here, any impact on maritime commerce is speculative at best and does not satisfy the test articulated in Sisson that the incident at issue "is likely to disrupt commercial activity." 497 U.S. at 363.

Movants argue that the following facts support the connection prong of admiralty

jurisdiction test: passengers being thrown into navigable waters; following the accident, the inability to rent the jet ski at issue because of its impoundment; other boating accidents in the past have led to the temporary closure of the PWC area; Officer Oliver spent two to three days preparing the accident report; and a response by a Harbor Patrol boat with flashing blue lights may result in other vessels altering their course and reducing their speed. (Movant's Suppl. at pp. 5-8). More specifically, Movants argue that the "mere fact that passengers were overboard in an emergency situation, such as the present matter, by itself has the potential to disrupt maritime commerce." (Suppl. Memo at p.8:4-5). In Taghadomi v. United States, 401 F.3d 1080 (9th Cir. 2005) two kayakers overturned their kayak in the open ocean off the coast of Maui. An individual on shore noticed the incident and reported it to the Coast Guard. The survivor of the incident brought two claims against the Coast Guard for negligent rescue and for failure-to-communicate with other first responders who could have responded to the accident. The Ninth Circuit generally described the incident as "injury to boaters whose vessel capsizes at sea because of a potential rescuer's negligence in carrying out its rescue operation." Id. at 1086. There the Ninth Circuit concluded that potential search-and-rescue operations (whether by the Coast Guard of commercial vessels responding to a call for aid) bear a significant relationship to traditional maritime activities and therefore the connection test for admiralty jurisdiction was satisfied. Id. at 1087.

Here, in contrast to Taghadomi, the accident occurred in an area close to shore and Claimants received medical treatment from land-based medics, and not by means of a Coast Guard response. While the law of "admiralty has always sought to encourage and induce men of the sea to go to the aid of life and property in distress," Berg v. Chevron U.S.A., 759 F.2d 1425, 1429 (9th cir. 1985), an area closed to commercial shipping is not subject to search and rescue efforts by commercial vessels and therefore there is no potential to disrupt maritime commerce. The court concludes that Taghadomi and Foremost Ins. Co. v. Richardson, 457 U.S. 668 (1982)(following collision of two pleasure craft at the mouth of the St. Lawrence Seaway, maritime

commerce may be disrupted) are not persuasive under the present circumstances because both <u>Taghadomi</u> and <u>Foremost</u> involved the potential to disrupt shipping, whether in the St. Lawrence Seaway or in the ocean off Hawaii.  Here, in contrast, no shipping related activities occur in the area of the accident and there is no possibility that commercial shipping vessels could ever respond to a maritime incident in the PWC area of Mission Bay.  Accordingly, any potential disruption to maritime commerce is insufficient to establish admiralty jurisdiction and the connection or nexus requirement is absent in the present case.

In sum, the court concludes that Movants fail to establish admiralty jurisdiction. Consequently, the court dismisses the complaint for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED: June 30, 2008

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:  All parties