Charles S. LiMandri, SBN 110841
Sterling J. Stires, SBN 199218
LAW OFFICES OF CHARLES S. LiMANDRI, APC
P.O. Box 9120
Rancho Santa Fe, California 92067
Tel: (858) 759-9930; Fax: (858) 759-9938

Rocky K. Copley, SBN 101628
LAW OFFICE OF ROCKY K. COPLEY
550 West "C" Street, Ste. 1150
San Diego, CA 92101
Tel: (619) 232-3131; Fax: (619) 232-1690

Attorneys for Movants MISSION BAY JET SPORTS, LLC
and ROBERT ADAMSON

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF MISSION BAY JET SPORTS, LLC; ROBERT ADAMSON, individually and d.b.a. MISSION BAY JET SPORTS, FOR EXONERATION FROM OR LIMITATION OF LIABILITY,<br><br>Limitation Petitioners. | CASE NO. 08cv0146 JM (CAB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LIMITATION PETITIONERS, MISSION BAY JET SPORTS, LLC AND ROBERT ADAMSON'S, MOTION TO STAY ENFORCEMENT OF JUDGMENT PENDING APPEAL**<br><br>**[F.R.A.P. 8]**<br><br>Date:        August 29, 2008<br>Time:        1:30 p.m.<br>Dept.:        16<br>Magistrate: Hon. Cathy Ann Bencivengo<br>Judge:       Hon. Jeffrey T. Miller |

Limitation Petitioners, MISSION BAY JET SPORTS, LLC and ROBERT ADAMSON, individually and doing business as MISSION BAY JET SPORTS (hereinafter collectively referred to as "MISSION BAY JET SPORTS"), submit this Memorandum of Points and Authorities in Support of their Motion to Stay Enforcement of Judgment Pending Appeal as follows:

///

///

1

**I.**

**STANDARDS FOR MOTION TO STAY PENDING APPEAL.**

A district court has discretion to stay its order, pending appeal, upon consideration of four factors.  The U.S. Supreme Court held that four factors, drawn from Federal Rule of Civil Procedure 62 and Appellate Rule 8, should be considered when deciding whether to grant a motion to stay.  These factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987); and Golden Gate Restaurant v. City and County of San Francisco, 512 F.3d 1112, 1115 (9th Cir. 2008); and Lopez v. Heckler, 713 F.2d 1432 (9th Cir. 1983).

The Ninth Circuit conceives this standard as "two interrelated legal tests" operating along a continuum.  Lopez v. Heckler, *supra*, 713 F.2d at 1435.  At one end of the continuum, the moving party may succeed if it shows that there is a probability of success on the merits, as well as a possibility of irreparable injury.  Id.; and Golden Gate Restaurant, *supra*, 512 F.3d at 1115-16.  At the other end, the moving party may succeed if it shows that it has raised "serious legal questions" and that "the balance of hardships tips sharply in its favor." Golden Gate Restaurant, *supra*, 512 f.3d at 1115-1116 (quoting Lopez, *supra*, 713 F.2d at 1435).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id., quoting Natural Res. Def. Council, Inc. v. Winter, 502 F.3d 859, 862 (9th Cir. 2007).

On June 30, 2008, the Court, in the present case, issued an Order Granting a Motion to Dismiss for Lack of Subject Matter Jurisdiction (hereinafter the "Order"), and rendered judgment against MISSION BAY JET SPORTS.  The motion to dismiss was brought by real parties in interest, HALEY COLOMBO and JESSICA SLAGEL (hereinafter collectively "Real Parties").  MISSION BAY JET SPORTS is in the process of appealing the Court's Order.  In the present case, there is a strong probability of success on appeal, and MISSION BAY JET SPORTS raises serious legal questions.  Therefore, and for the reasons set forth herein, MISSION BAY JET SPORTS' Motion to Stay the Enforcement of the Judgment should be granted, pending the appeal of the Order.

**II.**

**MOVANTS HAVE A STRONG PROBABILITY OF PREVAILING ON APPEAL.**

In this case, MISSION BAY JET SPORTS has a significant possibility of success on appeal for (3) reasons. First, this Court apparently misunderstood the facts of one of its key authorities, Foremost v. Richardson, 457 U.S. 668 (1982). The incident that is the subject of the Foremost case, a collision between two pleasure craft, took place in a Louisiana tributary, the Amite River. Id. at 669. The Supreme Court acknowledged that though the river was "navigable" at the site of the accident, though **it was "seldom, if ever, used for commercial traffic**." Id. at 670, fn. 2. The Court in the present matter apparently, and erroneously, believes that the facts of Foremost took place on the Saint Lawrence Seaway. (See, the Order, at p. 7-8) (citing Foremost as a "collision of two pleasure craft at the mouth of the Saint Lawrence Seaway."). However, in Foremost, the Supreme Court *sua sponte* transplanted the incident from the Amite River (the tributary), Louisiana to the Saint Lawrence Seaway, to illustrate that the general features of the accident had the possibility to disrupt maritime commerce. Id. at 675.

An equivalent analysis to the Supreme Court's in Foremost, in the present case, could place the accident at bar in the mouth of San Diego Harbor, which would yield a *very* different legal conclusion. If the subject accident, where passengers on a personal water craft were thrown off the vessel, had occurred in the shipping channel of San Diego Bay, would there be a potential to disrupt maritime commerce? The answer to that question is: absolutely.

The general features of the subject accident are passengers falling off of, or being thrown off of, a personal water craft in navigable waters. Relying on Foremost and Sisson v. Ruby, 497 U.S. 358, 363, the court in Choat v. Kawasaki Motors Corp., 675 So.2d 879, 880-881(Sup.Ct. Ala. 1996) held that:

> To determine the "potential effect on maritime commerce," we must imagine a incident of the same *general character* as the incident under consideration as having occurred, not in the location in which it actually occurred, but **in the busiest conceivable sea lane**. From that premise, we must then postulate the possible effect on commercial shipping of the occurrence *in that latter location*.

As the court relied on its erroneous belief as to the facts regarding Foremost to decide the present case, MISSION BAY JET SPORTS asserts that there is a strong likelihood of success on appeal.

1   Relying on the U.S. Supreme Court case of <u>Foremost v. Richardson</u>, *supra*, the court in <u>Oliver</u>
2   <u>v. Hardesty</u>, 745 F.2d 317 (4th Cir. 1984), in overturning a district court's dismissal for want of
3   admiralty jurisdiction, stated the following:

> The dispositive issue before us is whether a claim of negligent conduct arising from a collision between a 19 foot pleasure boat and a swimmer on navigable waters of the United States states a controversy within the admiralty jurisdiction of the federal courts. . . . We are of opinion the case was within the jurisdiction of admiralty, and so vacate and remand for further proceedings.

8   "An allegation of a navigational error appears to be the key to admiralty jurisdiction when dealing with
9   small pleasure craft." <u>Souther v. Thompson</u>, 754 F.2d 151, 153 (4th Cir. 1985)(citing <u>Foremost</u>, *supra*).
10  In the present matter, the central theme in Real Parties' claims is that the operator of the subject vessel
11  negligently operated the personal water craft. (See, the Order, at p. 2). The negligent "operation" of a
12  vessel is synonymous with negligent "navigation." <u>Hogan v. Overman</u>, 767 F.2d 1093 (4th Cir. 1985).
13  "**Since negligent operation of a vessel is alleged here, we conclude that the motion to dismiss for**
14  **lack of admiralty jurisdiction was improperly granted**." <u>Id</u>. at 1094.

15  Second, this Court analyzed the location of the incident, rather than the incident itself in the
16  "nexus" test. The Court in the present matter held that the area in which the accident occurred is
17  considered "navigable" waters for the purpose of admiralty jurisdiction. (See, the Order, at p. 4-5).
18  After the Court found that the location was navigable waters, and therefore suitable for federal
19  admiralty jurisdiction, it erroneously focused on the accident in the context of the *actual* location.
20  The Court went on to find that no commercial shipping vessel would respond to a distress call in
21  Mission Bay. (See, the Order at p. 7). To first determine that the PWC area is suitable for admiralty
22  jurisdiction, and second that negligently operating a personal water craft is not suitable for admiralty
23  jurisdiction *because it was in the PWC area*, is counterintuitive, and not in accordance with the law.
24  (See, e.g., <u>Choat v. Kawasaki Motors Corp.</u>, supra, 675 So.2d at 880-881).

25  None of the Supreme Court cases, nor any of the Ninth Circuit Court of Appeal cases, conclude
26  that the features of the navigable waters must be considered in the analysis of the "general features."
27  Rather, the Supreme Court, the Ninth Circuit, and all other Circuit Courts of Appeal, determine
28  whether the waters are "navigable" for purposes of admiralty jurisdiction; not how shallow those

1 waters are, or how close to shore the accident occurred. The courts then look to the general features of
2 the accident, *including the actions of the alleged tortfeasor*, "in order to properly assess the potential
3 for disruption of maritime commerce." <u>Walton v. Channel Star Excursions, Inc.</u>, 2007 WL 763299
4 (E.D. Cal. 2007)(only Westlaw cite currently available).

5       "The admiralty and maritime jurisdiction of the United States shall extend to and include all
6 cases of damage or injury, to person or property, caused by a vessel on navigable water,
7 notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C.A. §
8 30101(a), Extension of Admiralty Jurisdiction Act. In the interpretation of the Extension of Admiralty
9 Jurisdiction Act, the Ninth Circuit Court of Appeals has held that all that is required for the Act to be
10 implicated is injury caused by a vessel on "navigable waters." <u>Gebhard v. S.S. Hawaiian Legislator</u>,
11 425 F.2d 1303, 1307 (9th Cir. 1970). The court in the case of <u>St. Hilaire Moye v. Henderson</u>, 496 F.2d
12 973, 979 (8th Cir. 1974), relied on this decision to grant admiralty jurisdiction in a case where a
13 passenger was thrown overboard due to the alleged negligent operation of a pleasure craft in "navigable
14 waters" - much like the present matter.

15       Third, this Court inappropriately allowed local boating restrictions (the current use of the PWC
16 area exclusive to PWCs) to guide its analysis of federal admiralty jurisdiction, which is in direct
17 conflict with Ninth Circuit case of <u>Complaint of Paradise Holdings</u>, 795 F.2d 756, 759 (9th Cir. 1986).
18 In <u>Paradise Holdings</u>, the court found admiralty jurisdiction despite regulations prohibiting boating in
19 the area. <u>Id</u>. It is also important to note that the Ninth Circuit, in <u>Paradise Holdings</u>, held that the focus
20 should be on the "wrong" underlying the activity. <u>Id</u>. at 760 (quoting <u>Foremost</u>, *supra*, 457 U.S. at
21 674, **"Because the 'wrong' here involves the negligent operation of a vessel on navigable waters,**
22 **we believe that it has a sufficient nexus to traditional maritime activity to sustain admiralty**
23 **jurisdiction in the District Court."**).

24       Furthermore, in <u>Paradise Holdings</u>, just as in the present case, the injured swimmer was very
25 close to shore, and in shallow water. Still, the court held admiralty jurisdiction applied. See also,
26 <u>Medina v. Perez</u>, 733 F.2d 170 (1st Cir. 1984) (swimmers just over 100 feet from shore). "In the cases
27 after <u>Executive Jet</u>, the Court stressed the need for a maritime connection, but found one in the
28 navigation or berthing of pleasure boats, **despite the facts that the pleasure boat activity took place**

**near shore**, where States have a strong interest in applying their own tort law" <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock, Co.</u>, 513 U.S. 527, 543 (1995).

A dismissal for lack of subject matter jurisdiction is reviewed *de novo*. <u>Washington Trout v. McCain Foods, Inc.</u>, 45 F.3d 1351 (9th Cir. 1995). MISSION BAY JET SPORTS asserts that the foregoing errors could easily persuade reversal of the Court's June 30, 2008 order. Therefore the MISSION BAY JET SPORTS has a strong chance of success on appeal, and the first <u>Hilton</u> factor is satisfied.

### III.

**MOVANTS COULD SUFFER IRREPARABLE INJURY ABSENT A STAY OF ENFORCEMENT OF THE JUDGMENT PENDING APPEAL AND REAL PARTIES WILL NOT SUFFER INJURY FROM STAY PENDING APPEAL.**

There is a possibility that, absent a stay pending appeal, MISSION BAY JET SPORTS will suffer irreparable harm. Should the state court companion case move forward, and a money judgment is subsequently executed against MISSION BAY JET SPORTS, it may not be able to later recoup the money judgment if a federal court eventually finds that MISSION BAY JET SPORTS is entitled to limit its liability. This inability to recover expenses incurred from satisfying a judgment which is later vacated is irreparable harm. <u>Gibson v. U.S.</u> 761 F.Supp. 685, 692 (C.D. Cal. 1991). If this court does not grant a stay, the state court action initiated by the Real Parties will go forward. Real Parties will not suffer irreparable harm from granting a stay pending appeal because the Real Parties' claims against MISSION BAY JET SPORTS, whether in state or federal court, will be heard on their merits. Furthermore, the stay would not affect the Real Parties' case against the other named defendants in the state action. Without the stay of the enforcement of the judgment, this matter could procedurally be a nightmare for all parties involved. As such, both parties will benefit from staying the execution of the judgment. The second and third <u>Hilton</u> factors are, therefore, satisfied.

### IV.

**IT IS IN THE PUBLIC INTEREST TO GRANT A STAY OF ENFORCEMENT OF THE JUDGMENT PENDING APPEAL FOR JUDICIAL EFFICIENCY.**

Finally, under <u>Hilton</u>, the Court must consider the public interest implicated by the grant of the stay; this consideration is distinct from the harm to the parties in the court's grant or denial of a stay.

1 Natural Resource Defense Council, Inc. v. Winter, 502 F.3d 859, 863-64 (9th Cir. 2007). However,
2 "The public interest analysis in a stay is in part subsumed in the analysis of the balance of hardship to
3 the parties." Stormans Inc. v. Selecky, 526 F.3d 406, 417 (9th Cir. 2008). There exists a strong
4 possibility that, should the Court not stay enforcement of the judgment pending appeal, competing
5 adjudications could result if a state action is tried and concluded before the Court of Appeals issues a
6 judgment for MISSION BAY JET SPORTS, finding that there is indeed federal admiralty jurisdiction
7 in this case. Such an outcome would require at least two trials on the facts of the same case (one on the
8 merits of a state tort claim, one on the "privity and knowledge" and another possible trial on the third
9 party indemnity issues of the federal limitation action). This would waste significant amounts of public
10 judicial resources. For the sake of wise use of public judicial resources, this court should grant a stay
11 of the enforcement of the judgment pending the appeal of the Court's Order.

12 It is a fundamental principle that the maritime law of the United States be uniform throughout
13 the entire country. Moragne v. States Marine Lines, Inc., 398 U.S. 375, 402 (1970). One of the
14 purposes of establishing the rules of general maritime law as part of the laws of the United States is to
15 preserve harmony and uniformity in maritime matters in both international and interstate relations, and
16 to avoid burdens which might be imposed by the various states through which the U.S. "navigable"
17 waters run. Knickerbocker Ice Co. V. Stewart, 253 U.S. 149, 160; and Petition of Keller, 149 F.Supp.
18 513 (D. Minn. 1956). Indeed, this fundamental principle has long been held by the U.S. Supreme
19 Court to be constitutionally based. Moragne, *supra*, 398 U.S. at 402 (citing The Lottawanna, 88 U.S.
20 558, 575 (U.S.La. 1874).

21 In the U.S. Supreme Court case of Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674-
22 675, the Court stated:

> The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity. **This interest can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct**. The failure to recognize the breadth of this federal interest ignores the potential effect of noncommercial maritime activity on maritime commerce. (Emphasis added).

28 ///

The application of state law to this matter would undermine the uniformity of general maritime law because, should the Court fail to stay the enforcement of the judgment, the state court would apply state law to the subject case. If MISSION BAY JET SPORTS' appeal is granted, then there would be the application of federal maritime law. This could create confusion, an inconsistency in the application of the applicable law, and would undermine the constitutional and fundamental principle of uniformity in the application of maritime law. To protect the public interests with regard to these matters, MISSION BAY JET SPORTS asserts that the judgment cannot be enforced while it appeals the Court's Order. Therefore the final Hilton factor is satisfied.

## V.
## CONCLUSION

When balancing the four factors as set forth in Hilton v. Braunskill, 481 U.S. 770, 776 (1987) in the case at bar, it is clear that the Court should stay the enforcement of the judgment pending the appeal of the Order granting the motion to dismiss. For the foregoing reasons, MISSION BAY JET SPORTS respectfully requests the Court to issue an Order staying the enforcement of the judgment entered on June 30, 2008 pending the appeal.

LAW OFFICES OF CHARLES S. LiMANDRI, APC

DATED: July 18, 2008          By:     /s/ Sterling J. Stires
                                      Sterling J. Stires, Esq., and
                                      Law Offices of Rocky K. Copley, Esq.
                                      Attorneys for Plaintiffs MISSION BAY JET SPORTS, LLC
                                      and ROBERT ADAMSON