Charles S. LiMandri, SBN 110841
Sterling J. Stires, SBN 199218
LAW OFFICES OF CHARLES S. LiMANDRI, APC
P.O. Box 9120
Rancho Santa Fe, California 92067
Tel: (858) 759-9930; Fax: (858) 759-9938

Rocky K. Copley, SBN 101628
LAW OFFICE OF ROCKY K. COPLEY
550 West "C" Street, Ste. 1150
San Diego, CA 92101
Tel: (619) 232-3131; Fax: (619) 232-1690

Attorneys for Movants MISSION BAY JET SPORTS, LLC
and ROBERT ADAMSON

UNITED STATE DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF MISSION BAY JET SPORTS, LLC; ROBERT ADAMSON, individually and d.b.a. MISSION BAY JET SPORTS, FOR EXONERATION FROM OR LIMITATION OF LIABILITY,<br><br>Limitation Petitioners. | CASE NO. 08cv0146 JM (CAB)<br><br>**LIMITATION PETITIONERS' REPLY TO REAL PARTIES' OPPOSITION TO MOTION TO STAY ENFORCEMENT OF JUDGMENT PENDING APPEAL**<br><br>Date:       August 29, 2008<br>Time:       1:30 p.m.<br>Dept.:       16<br>Magistrate: Hon. Cathy Ann Bencivengo<br>Judge:      Hon. Jeffrey T. Miller |

Limitation Petitioners, MISSION BAY JET SPORTS, LLC and ROBERT ADAMSON, individually and doing business as MISSION BAY JET SPORTS (hereinafter collective referred to as "MISSION BAY JET SPORTS"), hereby submits its Reply to Real Parties' Opposition to the Motion to Stay Enforcement of Judgment Pending Appeal as follows:

Real Parties in Interest, Haley Colombo and Jessica Slagel (hereinafter referred to as "Real Parties") accuse MISSION BAY JET SPORTS of using "dilatory tactics" by filing the Petition for Limitation of Liability action, and "effectively stalling any progress in the state court proceedings." (See, Real Parties' Opposition to Motion to Stay Enforcement of Judgment Pending Appeal

1

(hereinafter the "Opposition"), at p. 11, lines 1-10). There is no place in these proceedings for such childish and improper accusations. At no time has MISSION BAY JET SPORTS violated any ethical rules, and, in good faith, has exercised its right to file the Limitation action. If Real Parties have evidence that MISSION BAY JET SPORTS has committed some sort of abuse of process, violated some ethical rules or has willfully delayed the proceedings for an improper purpose, then Real Parties should provide such evidence. If Real Parties do not have such evidence, then they should cease from making such baseless accusations.

Discovery against the other named defendant in the state action, Brett Kohl, has been ongoing for months, and has not been affected in any way by the Limitation action. Real Parties admit that they have not yet even served a complaint on two new defendants in the state action. (See, Opposition, at p. 1, line 27). These new defendants include the manufacturer of the subject personal watercraft ("PWC"). This is not a situation where the identity of a possible defendant was just recently discovered. For some strategic reasoning, that has nothing to do with MISSION BAY JET SPORTS or its conduct during this litigation, Real Parties have not served a complaint against the manufacturer of the PWC. Furthermore, nothing had prevented Real Parties from filing an answer and claim in the Limitation action, then proceeding with its motion to dismiss. Had Real Parties filed an answer, discovery could have commenced in the Limitation action. Therefore, any delay was largely due in part of Real Parties' own actions.

## **MISSION BAY JET SPORTS HAS FOLLOWED PROPER PROCEDURE IN FILING THE MOTION TO STAY WITH THIS COURT.**

According to Rule 8 of the Federal Rules of Appellate Procedure, "A party must ordinarily move first in the district court for the following relief: (A) a stay of the judgment or order of a district court pending appeal." FRAP 8(a)(1)(A). As MISSION BAY JET SPORTS is requesting the stay of the enforcement of the judgment, making this motion in this Court is proper. Indeed, to bring a motion to stay at the appellate level, the moving party must establish that it has sought relief at the district court, or that such a motion at the district court level would be impracticable. FRAP 8(a)(2)(A). Therefore, bringing this motion before this Court is a prerequisite from seeking relief from the Ninth Circuit.

Where a court's ruling has resulted in a judgment of dismissal or summary judgment, a motion for relief from judgment may be brought if the moving party can show "mistake, inadvertence, surprise or excusable neglect." FRCP 60(b)(1). However, rather than file such a motion, as such motions are rarely granted, MISSION BAY JET SPORTS appealed the Court's Order Granting Motion to Dismiss for Lack of Subject Matter Jurisdiction. As the Court had entered judgment in the present matter on the same day that it issued the Order (on June 30, 2008), MISSION BAY JET SPORTS filed a Motion to Stay the Enforcement of Judgment Pending Appeal, pursuant to Rule 62 of the Federal Rules of Civil Procedure. MISSION BAY JET SPORTS contends that staying the enforcement of the judgment pending the appeal is properly executed by way of a Rule 62 motion.

## THE PRESENT CIRCUMSTANCES WARRANT THE STAY OF ENFORCING THE JUDGMENT IN THIS MATTER.

Whether admiralty jurisdiction is proper requires that two criteria be met. First, the *type of incident* involved must "potentially affect maritime commerce." Sisson v. Ruby, 497 U.S. 358, 363 (1990). Second, the *type of activity* involved must bear a substantial relationship to traditional maritime activity. Id. at 362 (quoting from Foremost Ins. Co. v. Richardson, 457 U.S. 668, 675, n. 5 (1982)). The present dispute involves the first prong of this test.

**"To determine the 'potential effect on maritime commerce,' we must imagine an incident of the same *general character* as the incident under consideration as having occurred not in the location in which it *actually* occurred, but in the *busiest conceivable sea lane*. From that premise, we must then postulate the possible effect on commercial shipping of the occurrence *in that later location*."** Choat v. Kawasaki Motors Corp., 675 So.2d 879, 880-881 (Sup.Ct. Ala. 1996)(quoting Sisson, *supra*, 497 U.S. at 363) (emphasis in original). MISSION BAY JET SPORTS respectfully contends that this is not the standard that the Court applied in determining whether admiralty jurisdiction applies in the present matter because it relied on its erroneous reading of Foremost.

/ / /
/ / /
/ / /
/ / /

3

As mentioned in MISSION BAY JET SPORTS' Motion to Stay, the actual location of the accident in <u>Foremost</u> was in a small tributary where little or no commercial maritime activity takes place. (See, Motion to Stay, at p. 3). The accident in <u>Foremost</u> did not occur at the mouth of the St. Lawrence Seaway, as mistakenly stated by the Court in its Opinion. (See, Court's Order Granting Real Parties' Motion to Dismiss, at p. 7-8). In summarizing <u>Foremost</u>, the court in <u>Choat</u> stated:

> Thus, in <u>Foremost</u>, the Court held that **a collision on the Amite River** in Louisiana between an eighteen foot pleasure boat; towing a water skier and a sixteen foot bass boat potentially interfered with maritime commerce, notwithstanding that the facts that neither vessel had ever been engaged in commercial maritime activity and that **the *situs* of the accident had been 'seldom, if ever used for commercial activity.'**

<u>Choat</u>, *supra*, 675 So.2d at 881 (citing <u>Foremost</u>, *supra*, 457 U.S. at 678)(emphasis added).

In <u>Choat</u>, *supra*, there was a fatal collision a jet ski with a swimmer, about 50 feet from shore, on an impoundment of the Tennessee River, called Wilson Lake, that is used for recreational purposes. The court in <u>Choat</u>, *supra*, 675 So.2d at 881, held that admiralty jurisdiction applied because **"Were an incident of this genre to occur 'at the mouth of the St. Lawrence Seaway,' emergency personnel could be called to rescue victims or to retrieve casualties. Such rescue activities could interrupt commercial shipping."** (citing <u>Foremost</u>, *supra*, 457 U.S. at 675; and <u>In the Matter of Bird</u>, 794 F.Supp. 575, 579 (D.S.C. 1992)). Similarly, had the accident at issue in this case occurred in the St. Lawrence Seaway, maritime commerce could be disrupted because "emergency personnel could be called to rescue victims."

The case of <u>In the Matter of Bird</u>, 794 F.Supp. 575 (D.S.C. 1992), is strikingly similar to the present matter before the Court. In <u>Bird</u>, a pleasure boat owner filed a Limitation of Liability Act complaint after he was sued when a passenger was allegedly pushed off of his vessel. The injured passenger filed a motion to dismiss, which the court denied. <u>Id</u>. The accident in <u>Bird</u> occurred when

///

///

///

the subject vessel was anchored in shallow water in an area that is not a commercial waterway. <u>Id</u>. The court stated:

> It is obvious at first glance that a person overboard in a shallow tributary of a small river which sees very few, if any commercial vessels, has little or no potential of disrupting commercial maritime activity. However, it is apparent from <u>Foremost</u> and <u>Sisson</u> that this court may not limit its inquiry to whether there is a potential of disruption of commercial maritime activity in the tributary . . . **The court instead must remove the scene of the accident to the busiest of maritime thoroughfares and then ask whether a passenger thrown overboard from a pleasure craft on that major thoroughfare has the potential of disrupting maritime activity.**

<u>Id</u>. at 580.

The claimant in <u>Bird</u> argued that there would not have been any disruption to maritime commerce because it took him less than a minute to swim back to the vessel. <u>Id</u>. at 581. However, the court found that this position was not consistent with the Supreme Court's "abstract approach to the nexus test." The court then stated "there is potential that a man overboard may be lost, or severely injured so that help is needed to safely bring the man back aboard the vessel." <u>Id</u>. The court further stated that " **The commotion caused by such an incident in a crowded seaway would potentially have an impact on maritime commerce.**" In denying the claimant's motion to dismiss the Limitation action, the court in <u>Bird</u> held that this "potentiality" was sufficient to fulfill the nexus test. <u>Id</u>. Under this analysis, MISSION BAY JET SPORTS contends that its success on appeal is very likely.

MISSION BAY JET SPORTS respectfully disagrees with the Court's position that the "general features" of the subject accident necessarily includes the restriction of the area to only PWC operation. If there were no such restrictions, would the Court have found admiralty jurisdiction? If the subject accident had occurred just outside of the PWC area, would the Court have found that admiralty jurisdiction applied? Indeed, **if the subject accident had occurred in the "busiest conceivable sea lane" admiralty jurisdiction would be certain.** (See, <u>Sisson</u>, *supra*, 497 U.S. at 363). In this regard,

1   the PWC area restriction is artificial, is not a permanent feature and does not preclude the physical
2   possibility of commercial vessel traffic in the area.  It would make little sense if admiralty jurisdiction
3   applied just outside the PWC area, and then not apply within the PWC area.
4         In Foremost, the Supreme Court held that:

> The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity. **This interest can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct**. The failure to recognize the breadth of this federal interest ignores the potential effect of noncommercial maritime activity on maritime commerce.

Foremost, *supra*, 457 U.S. at 674-675.  Finding admiralty jurisdiction in a case such as the case at bar serves the purpose of making uniform rules of conduct, including the navigational "Rules of the Road," which are implicated in the present case, and other rules applicable to all interstate maritime traffic, whether commercial or for pleasure.  Finneseth v. Carter 712 F.2d 1041, 1046-1047 (6th Cir. 1983).  It is not logical or reasonable that one set of navigational rules should apply to the waters immediately adjacent to the PWC area, and another set of rules apply within the PWC area.  MISSION BAY JET SPORTS asserts that the law does not allow such a finding.

      There is a strong public interest in the application of uniform navigational rules.  Having one set of rules of law apply to the PWC area, and another set of rules apply in the waters immediately adjacent to the PWC area "could lead to inconsistent rules of conduct depending on a pleasure boater's precise location within the territorial jurisdiction of one state or another and inconsistent rules of liability depending on the location of a tortious occurrence."  Finneseth, *supra*, 712 F.2d at 1047.  Staying the enforcement of the judgment will do no harm to the public.  Enforcing the judgment, however, could lead to the inconsistent application of maritime law, and confusion as to what law applies in certain areas of Mission Bay.  Therefore, there is a strong public interest in granting MISSION BAY JET SPORTS' Motion to Stay.

In the case of Price v. Price, 929 F.2d 131 (4th Cir. 1991), a passenger on a motor boat brought an admiralty action arising out of the boat operator's alleged negligence in attempting to beach the vessel onshore and the passenger's resulting injury when the boat's wake caused her to lose her balance and injure herself while disembarking the vessel. The accident occurred at the Kerr Reservoir, which is a man-made lake that straddles Virginia and North Carolina. Id. at 134. The only "commercial" activity that takes place on the reservoir supports the lakes recreational use, such as vessel rentals and fishing guides (much like Mission Bay). Id. The district court, therefore, considered that the reservoir was only used for recreational purposes. Id. at 135.

The court in Price stated: "We must decide in this case whether a negligence claim based on personal injury, sustained when a passenger disembarked from a small pleasure boat on the John H. Kerr Reservoir in Virginia, is within the admiralty jurisdiction of the federal courts . . ." Price, *supra*, 929 F.2d at 133. In analyzing this question, the court further stated:

> Rules governing conduct on navigable waters cannot remain uniform or have any certainty if their applicability is dependent on whether on any given day, commercial maritime activity is being conducted on the waters . . . the test for navigability is based on a broader and more stable factor than whether the body of water is currently being used for commercial navigation. It must also include a consideration of whether the body of water is *capable* of bearing commercial navigation.

Id. at 133-134. In the present case, much like the in the Price case, the Court held that subject waters (the PWC area) are not currently used for commercial maritime activity. (See, Court's Order Granting Real Parties' Motion to Dismiss, at p. 6-7). However, the PWC area is certainly *capable* of supporting maritime commerce. The fact that the PWC area is currently restricted to PWC traffic is irrelevant as to whether the waters are capable of supporting maritime commerce in its current condition. Indeed, the possibility of disrupting maritime commerce on the Kerr Reservoir is more speculative than the possibility of disrupting maritime commerce in the PWC area, because the Kerr Reservoir was purely used for recreational purposes and not open to the ocean. Yet, the court in Price held that admiralty jurisdiction applied to that case. Id. at 136.

The "general features" in the Price case included a claim of an error in navigation, the vessel was operating at excessive speed causing a large wake, and the operator did not approach the shore in a manner that allowed the passengers to disembark safely. Price, *supra*, 929 F.2d at 136. In holding that admiralty jurisdiction applied in the Price case, the court stated:

> By applying the Sisson approach and examining the general character of the allegations, we conclude that the overriding factor in this case, which brings it within the courts of admiralty, is the source of liability emanating from the navigation of a vessel, albeit a small pleasure boat.

Id. In the present case, the "general character of the allegations" include the negligent operation of a vessel on navigable waters, where the operator intentionally "threw" the passengers off of the vessel, which caused injury to the passengers. It is again important to recognize that had the subject accident occurred "in the St. Lawrence Seaway," the possibility of the disruption of maritime commerce would most certainly exist.

The court in Price did not consider the shallowness of the water, nor did it consider the current lack of maritime commerce on the Kerr Reservoir, in its analysis of the "general features" of the accident. As Judge Kozinsky warned in his dissent in the case of Delta Country Ventures, Inc. v. Magana, 986 F.2d 1260, 1265 (9th Cir. 1993), "It is possible, of course, to define any set of circumstances in a way that will appear to have little or no relationship to traditional maritime activity." Pursuant to the foregoing, MISSION BAY JET SPORTS contends that there is a substantial likelihood that it will prevail on appeal.

The irreparable harm that would occur should the Court deny the Motion to Stay includes the possibility of, and likely, inconsistent judgments between the state and federal courts. There is no guarantee that the Ninth Circuit will rule on MISSION BAY JET SPORTS' appeal prior to the trial in the state action. If, in the state action, the jury renders a verdict against MISSION BAY JET SPORTS, then subsequently the Ninth Circuit finds that admiralty jurisdiction is proper, there could easily be inconsistent judgments. This is because the state court will be applying California law, while the federal court will be applying federal maritime law. MISSION BAY JET SPORTS has brought an action in this Court pursuant to the Limitation of Liability Act, which is necessarily an admiralty

matter. This remedy is not available to MISSION BAY JET SPORTS in the state action. Should the Ninth Circuit find admiralty jurisdiction applies in this case after the state court action, there would be a second trial on identical issues with a very real possibility of different results. This is especially true given that the state court would not be applying federal maritime law in that action, and because of the application of the Limitation of Liability Act claim. Therefore, because of the possibility of this irreparable harm, MISSION BAY JET SPORTS contends that staying the enforcement of the judgment is proper.

## CONCLUSION

MISSION BAY JET SPORTS contends that there is a strong likelihood of success on appeal for the reasons set forth above. Further, the public interest would be served by staying the enforcement of the judgment because there is a strong public interest in the application of uniform navigational rules. Finally, MISSION BAY JET SPORTS contends that denying the stay could, and would likely, lead to irreparable harm. For the foregoing reasons, MISSION BAY JET SPORTS respectfully requests that the Court grant its Motion to Stay Enforcement of the Judgment Pending Appeal.

Respectfully submitted,

LAW OFFICES OF CHARLES S. LiMANDRI, APC

DATED: August 18, 2008          By:     /s/ Sterling J. Stires
                                        Sterling J. Stires, Esq., and
                                        Law Offices of Rocky K. Copley, Esq.
                                        Attorneys for Plaintiffs MISSION BAY JET SPORTS,
                                        LLC and ROBERT ADAMSON

<u>**CERTIFICATE OF SERVICE**</u>

<u>**In the Matter of the Complaint of Mission Bay Jet Sports, LLC**</u>

*U.S. District Court Case No.:*  08 CV 0146 JM (CAB)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- **LIMITATION PETITIONERS' REPLY TO REAL PARTIES' OPPOSITION TO MOTION TO STAY ENFORCEMENT OF JUDGMENT PENDING APPEAL.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

| | |
|---|---|
| Thomas Tosdal, Esq.<br>TOSDAL SMITH STEINER & WAX<br>401 West "A" Street, Ste. 320<br>San Diego, CA 92101<br>Tel: (619) 239-7200<br>Fax: (619) 239-6048<br>E-Mail: ttosdal@tosdalsmith.com<br>**Attorneys for Plaintiffs** | Rocky K. Copley, Esq.<br>LAW OFFICES OF ROCKY COPLEY<br>550 West "C" Street, Ste. 1150<br>San Diego, CA 92101<br>Tel: (619) 232-3131<br>Fax: (619) 232-1690<br>E-Mail: rkcopley@rkc-rocklaw.com<br>**Attorneys for Mission Bay Jet Sports, LLC and Robert Adamson** |

Paul Kissel, Esq.
BORTON PETRINI, LLP
1320 Columbia Street, Ste. 210
San Diego, CA 92101
Tel: (619) 232-2424
Fax: (619) 531-0794
E-Mail: pkissel@bortonpetrini.com
**Attorneys for Defendant Brett Kohl**

■    **BY MAIL - as follows:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

■    **BY ELECTRONIC MAIL - as follows:** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Executed on August 19, 2008, at Rancho Santa Fe, California.

_____
Kathy Denworth

---

1
CERTIFICATE OF SERVICE                                        Case No.: 08 CV 0146 JM (CAB)