# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF MISSION BAY JET SPORTS, LLC; ROBERT ADAMSON, individually and d.b.a. MISSION BAY SPORTS, FOR EXONERATION FROM OR LIMITATION OF LIABILITY,<br><br>                              Movants. | CASE NO. 08cv0146 JM(CAB)<br><br>ORDER DENYING MOTION TO STAY ENFORCEMENT OF JUDGMENT PENDING APPEAL |

  Mission Bay Jet Sports, LLC and Robert Adamson, individually and doing business as Mission Bay Jet Sports (collectively "Movants") move to stay enforcement of this courts June 30, 2008 Order Dismissing the Action for Lack of Subject Matter Jurisdiction ("Order") pending appeal. The Order dismissed Movants' Limitation of Liability Act action for lack of subject matter jurisdiction. Claimants Haley Colombo and Jessica Slagel (collectively "Claimants") oppose the motion.

  In seeking to stay a judgment pending appeal, the "party must ordinarily move first in the district court" before seeking relief from the appellate court. Fed.R.App.P. 8. Whether to grant a stay pending appeal, the court consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Stormans Inc. v. Selecky, 526 F.3d 406, 412 (9th Cir.

1  2008 (quoting <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776 (1987)).  The likelihood of
2  success and the irreparable injury factors are considered on "a sliding scale in which the
3  required degree of irreparable harm increases as the probability of success decreases.
4  Where the stay applicant demonstrates a strong likelihood of success, the possibility of
5  irreparable injury is sufficient to warrant a stay.  On the other end of the sliding scale,
6  where the stay applicant demonstrates that the balance of hardships tips sharply in its
7  favor, the applicant must show only that it raises serious legal questions. The public
8  interest factor is considered "separately from and in addition to whether the applicant
9  for stay will be irreparably injured absent a stay."  <u>Id.</u> (Citations omitted).
10  <u>Success on the Merits</u>
11  Movants argue that they have demonstrated a strong probability of prevailing on
12  appeal. First, Movants correctly argue that the court misidentified the river at issue in
13  <u>Foremost Ins. Co. v. Richardson</u>, 457 U.S. 688 (1982) as the St Lawrence River instead
14  of the Amite River.  The Amite River flows through Mississippi and Louisiana before
15  discharging into Lake Maurepas, Lake Pontchartrain, and the Gulf of Mexico.
16  <u>http://www.wikipedia.org/wiki/Amite_River.</u>  This inadvertent misidentification in a
17  parenthetical reference does not alter the court's analysis as binding legal precedent, as
18  applied and set forth in the Order, is identified in <u>Jerome B., Grubart, Inc. v. Great</u>
19  <u>Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 527 (1995) and <u>Sisson v. Ruby</u>, 497 U.S. 358
20  (1990).  In <u>Foremost</u> the Supreme Court rejected the notion that "a substantial
21  relationship with commercial maritime activity is necessary" to establish admiralty
22  jurisdiction. <u>Foremost</u>, 457 U.S. at 674.  Assuming that the accident between the two
23  pleasure vessels at issue occurred in a navigable portion of the Amite River, <u>id.</u> at 680
24  n.2, the Supreme Court rejected the notion that admiralty jurisdiction required a
25  "commercial use of a given boat." <u>Id.</u> at 677.  Here, the court's analysis did not turn on
26  the commercial or private use of the water craft at issue. Rather, the issue of admiralty
27  jurisdiction turns on the application of the location and connections tests. See <u>Grubart</u>,
28  513 U.S. at 534.

1    Second, Movants contend that the court inappropriately "analyzed the location
2 of the incident, rather than the incident itself in the 'nexus' test.'" (Motion at p.4:15-
3 16). The critical inquiry requires the court to "assess the general features of the type
4 of incident involved to determine whether such an incident is likely to disrupt
5 commercial activity." <u>Sisson</u>, 497 U.S. at 358. Here, as set forth in the Order, the
6 accident occurred in an isolated cul-de-sac area of Mission Bay. No commercial
7 shipping activities occur in or near the Personal Watercraft Area ("PWA"). The court
8 notes that the scope of admiralty jurisdiction has been refined over time. Prior to
9 <u>Executive jet Aviation Inc. v. City of Cleveland</u>, 409 U.S. 249 (1972) admiralty
10 jurisdiction was traditionally established "[i]f the wrong occurred on navigable waters."
11 <u>Foremost</u>, 457 U.S. at 672. The court notes that many of the authorities cited by
12 Movants pre-date the location and connection tests for admiralty jurisdiction set forth
13 in <u>Grubart</u> and <u>Sisson</u> and did not occur on isolated bodies of water like the PWA. <u>See</u>
14 <u>e.g.</u> <u>Oliver v. Hardesty</u>, 745 F.2d 317 (4th Cir. 1984); <u>Souther v. Thompson</u>, 754 F.2d
15 151, 153 (4th Cir. 1985); <u>Hogan v. Overman</u>, 767 F.2d 1093 (4th Cir. 1985); <u>Gebhard v.</u>
16 <u>S.S. Hawaiian Legislator</u>, 425 F.2d 1303, 1307 (9th Cir. 1970); <u>St Hilaire Moye v.</u>
17 <u>Henderson</u>, 496 F.2d 973 (8th Cir. 1974); <u>Complaint of Paradise Holdings</u>, 795 F.2d 756
18 (9th Cir. 1986). Under the admiralty jurisdiction test applicable prior to <u>Executive Jet</u>,
19 the incident at issue would likely have occurred within the scope of admiralty
20 jurisdiction. <u>See</u> <u>Foremost</u>, 457 U.S. at 672 (admiralty jurisdiction was traditionally
21 established "[i]f the wrong occurred on navigable waters").

22    One debatable issue raised by Movants is whether the general nature of the
23 incident under <u>Sisson</u> properly includes a reference to the incident having occurred "in
24 an area closed to commercial shipping." (Order at p.6:2). The area where the incident
25 occurred is not just closed to commercial shipping, but inaccessible to commercial
26 shipping. Seen in this light, the court concludes that this is an immutable and
27 indispensable characteristic of the site of the incident. Without a reference to the
28 general nature of the incident as occurring "in an area closed to commercial shipping,"

1  the court would effectively disregard the Supreme Court's instruction that "protecting
2  commercial shipping is at the heart of admiralty jurisdiction" and "[n]ot every accident
3  in navigable waters that might disrupt maritime commerce will support federal
4  admiralty jurisdiction." Sisson, 497 U.S. at 362. To ignore the determinative feature
5  of the incident - - the inaccessibility of the area to commercial shipping - - would
6  disregard the focus of admiralty jurisdiction "to protect commercial shipping." Id.

7  In sum, the court concludes that Movants have not made a strong showing of
8  success on the merits.

9  Irreparable Harm and Balance of Hardships

10  Movants argue that there is a "possibility," (Motion at p.6:11), of irreparable
11  harm if the judgment is not stayed because entry of a state court money judgment
12  against them may result in their inability "to recoup the money judgment if a federal
13  court eventually finds that MISSION BAY JET SPORTS is entitled to limit its
14  liability." (Motion at p.6:13-15). This speculative argument is insufficient to make a
15  showing of irreparable harm. "The possibility that adequate compensatory or other
16  corrective relief will be available at a later date, in the ordinary course of litigation,
17  weights heavily against a claim of irreparable harm." Adees Corp. v. Avis Rent A Car
18  System, Inc., 2004 U.S. Dist LEXIS 27329, p.3-4 (C.D. Cal. 2004). Here, there is no
19  indication that Movants would not be adequately compensated should they prevail in
20  state court. Further, the court notes that this factor is difficult to fully assess as the
21  potential harms requires an assessment of the claims and defenses in the state court
22  action.

23  In balancing the hardships, both parties are harmed by excessive delays in
24  resolving the limitation of liability claim as well as Claimants state tort claims. If
25  stayed, a favorable resolution of the Limitation Act claim will reduce the costs to both
26  Movants and Claimants. On the other hand, an unfavorable ruling on the limitation
27  claim will delay resolution of the state court action and increase costs to both parties.
28  Any delay also implicates the ability of the parties to conduct timely discovery as

1  memories fade and evidence may become stale. Further, a delay would harm the
2  Claimants ability to obtain timely compensation for their serious injuries. Finally, the
3  court notes that the issue of delay is difficult to assess because it requires the parties and
4  the court to anticipate the Ninth Circuit's schedule for resolving the underlying appeal.[1]

6  In sum, these factors are neutral at best, neither favoring one party nor the other.
7  <u>The Public Interest</u>
8  Movants argue that there is a strong possibility that, absent a stay of the
9  judgment, "competing adjudications could result if a state action is tried and concluded
10 before the Court of Appeals" rules on the appeal. (Motion at p.7:4-6). Again, the
11 weight given to the public interest prong depends on events yet to occur. Whether the
12 appeal is resolved in a relatively short or long period of time is not readily ascertainable.
13 This element, the court concludes, is neutral at best.
14 In sum, in light of the minimal showing of the likelihood of success on the merits,
15 the court denies the motion to stay.
16 **IT IS SO ORDERED.**
17 DATED: September 2, 2008

_____
Hon. Jeffrey T. Miller
United States District Judge

21 cc:        All parties

---

[1] The court notes that Movants may also move the Ninth Circuit to stay the judgment under Fed.R.App.P. 8(a) or even to seek expedited briefing pursuant to Circuit Rule 27-12.